Not For Publication

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 09-31497 (LMW) |
| AMY BETH FINNIMORE and ROBERT ANTHONY FINNIMORE, | ) ) ) | CHAPTER | 7 |
| DEBTORS. | ) | | |
| RODERICK CARDWELL, | ) | ADV. PRO. NO. | 10-3036 |
| PLAINTIFF | ) ) | ECF NO. | 1 |
| vs. | ) | | |
| AMY BETH FINNIMORE and ROBERT ANTHONY FINNIMORE, | ) ) ) | | |
| DEFENDANTS. | ) | | |

## APPEARANCES

Edward P. Jurkiewicz, Esq.                    Attorney for the Plaintiff
Lawrence & Jurkiewicz, LLC
30 East Main Street
Avon, CT 06001

Amy Beth Finnimore                            Defendants *Pro Se*
Robert Anthony Finnimore
29 Wall Street
Milford, CT 06460

## ORDER AND RULING ON STANDING ISSUE

Lorraine Murphy Weil, Chief United States Bankruptcy Judge

This adversary proceeding concerns the above-referenced plaintiff's ("Cardwell") objection pursuant to 11 U.S.C. § 727 to entry of discharge in this chapter 7 case with respect to either of the above-referenced debtors (collectively, the "Debtors").[1] The precise issue to be decided here is Cardwell's standing (*vel non*) to prosecute this objection to discharge proceeding with respect to the Husband and/or the Wife. This court has jurisdiction over this matter as a core proceeding under 28 U.S.C. §§ 1334 and 157 and that certain Order dated September 21, 1984 of the District Court for this District (Daly, C.J.).[2] This memorandum constitutes the findings of fact and conclusions of law to the extent mandated by Rule 52 of the Federal Rules of Civil Procedure (made applicable to this adversary proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure).

## I. PROCEDURAL BACKGROUND

### A. The Chapter 7 Case

Pursuant to 11 U.S.C. § 302, this chapter 7 case was commenced by the filing of a joint petition by the Husband and the Wife on June 5, 2009.[3] (*See* Case ECF No. 1.)[4] Original schedules

---

[1] The Debtors are husband (the "Husband") and wife (the "Wife").

[2] That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceedings arising under Title 11, U.S.C., or arising in . . . a case under Title 11, U.S.C. . . . ."

[3]
> A joint petition does nothing more than simultaneously commence two individual cases . . . . [When a joint petition is filed] two separate bankruptcy estates–the husband's and the wife's–are created. *A joint petition more readily permits the two estates to be administered [i.e., a joint administration] by one trustee, but, unless substantively consolidated, does not affect the legal rights or obligations of the debtors, the creditors or the trustee. Reider v. FDIC (In re Reider)*, 31 F.3d 1102, 1109 (11th Cir. 1994); *In re Olien*, 256 B.R. 280, 283 (Bankr. E.D.Tenn. 2000); *In re McKenzie Energy Corp.,* 228 B.R. 854, 874 (Bankr. S.D. Tex. 1998); *In re McCulley*, 150 B.R. 358, 360 (Bankr. M. D. Pa. 1993); *Matter of Stuart*, 31 B.R. 18, 19 (Bankr. D. Conn. 1983); 2 Collier on Bankruptcy ¶ 302.01[1], at 302-3 (15th ed. rev., 2000). A joint petition is a mere procedural convenience for the

and statements were filed shortly thereafter. (*See* Case ECF Nos. 10 (Schedule A), 11 (Schedule D), 14 and 15 (collectively with ECF No. 14, Schedule F), 18 (Statement of Financial Affairs), 22 (Schedule B), 23 (Schedule C), 24 (Schedule E), 25 (Schedule G), 26 (Schedule H), 27 (Schedule I), 28 (Schedule J, collectively with Case ECF Nos. 10, 11, 14, 15, 18, 22, 23, 24, 25, 26, 27, the "Original Schedules"). The Original Schedules (as amended from time to time, the "Schedules") were amended from time to time. (*See* Case ECF Nos. 29 (Amended Schedule F), 40 (Amended Schedule G), 71 (Amended Statement of Financial Affairs).[5]) On their original Schedule F (Creditors Holding Unsecured Nonpriority Claims), the Debtors listed an "unliquidated" and "disputed" claim against the Husband with respect to a debt for "contract specific performance prior to 11/18/08" purportedly owing to Cardwell in the amount of $220,400.00. (*See* Case ECF No. 15.) On Schedule B (Personal Property), the Debtors list an alleged "joint" claim against "Cardewell" [sic] as an asset in the amount of $350,000.00 (the "Debtor Claim"). (*See* Case ECF No. 22 (Schedule B, item 21).)

---

debtors, creditors and trustee.

*In re Thomas,* 261 B.R. 848, 853 (Bankr. E.D. Va.), *rev'd on other grounds*, 274 B.R. 450 (E.D. Va. 2001), *aff'd,* 312 F.3d 145 (4th Cir. 2002) (emphasis added). These two individual estates have not been substantively consolidated.

[4] References herein to the docket of this chapter 7 case appear in the following form: "Case ECF No. __." References herein to the docket of this adversary proceeding appear in the following form: "ECF No. __." The Debtors are represented in the chapter 7 case by Michael A. Laux, Esq. (*See* Case ECF No. 1.) The case docket also lists Richard C. Marquette, Esq. as the Debtors' chapter 7 counsel, but that appears to be the result of a docketing error by counsel. (*See* Docket Entry for Case ECF Nos. 99, 100.) As discussed more fully below, the Debtors originally were represented by Attorney Marquette in this adversary proceeding, but now are *pro se* in this proceeding.

[5] That last amendment was "denied" for the failure of the Debtors to sign the amendment. (*See* Case ECF No. 81.)

On December 14, 2009, the trustee (the "Trustee") serving in this chapter 7 case filed a report of assets available for distribution to creditors (*see* Case ECF No. 65), and a notice to that effect (setting a last date to file proofs of claim of March 15, 2010) was issued on December 15, 2009 (*see* Case ECF No. 66) and served on creditors on December 17, 2009 (*see* Case ECF No. 67). On February 22, 2010, Cardwell filed a proof of claim in this case, naming both of the Debtors as "debtor" and both himself and "Ticketworld LLC" ("Ticketworld") as "creditor." (*See* Claims Register, Claim No. 7-1, the "POC.") The POC asserts an unsecured, nonpriority claim in the amount of $220,400.00 for "[b]reach of three (3) fully paid contracts [the "Contracts"], (*id.*). Among other documentation annexed to the POC are copies of the following: (a) "Ticketworld Agreement to Purchase" between "Ticketworld . . . Represented by Roderick Cardwell, Owner," as purchaser, and "Tailgate Tickets . . . . Represented by Robert Finnimore, 'acting owner'," as seller, dated October 29, 2007 with respect to "NY Giants 2008 season tickets" for a payment of $140,400.00;[6] (b) a similar contract also dated October 29, 2007 between the same parties with respect to a similar subject for a payment of $40,000.00;[7] and (c) a similar contract dated January 15, 2008 between the same parties with respect to a similar subject for payment of $40,000.00.[8]

---

[6] (*See* POC, Exhibit "A.") That contract was signed (a) by Cardwell "on behalf of Ticketworld," (b) by the Husband "on behalf of Tailgate tickets [sic]," and by a certain Sandra Chita as "Witness[]."

[7] (*See* POC, Exhibit "B.") That contract was signed in the same manner as the other Contract of even date therewith.

[8] (*See* POC, Exhibit "G.") That contract was signed in the same manner as the two earlier Contracts except that the Wife signed as an additional witness. Except as heretofore described, the Wife's name does not appear in the POC otherwise.

- 4 -

On January 10, 2011, the Debtors filed an objection (Case ECF No. 106, the "Objection") to the POC. The Objection stated in its entirety: "The Debtors named herein hereby OBJECT to the . . . [POC]." (*Id.*) The Objection was set down for a hearing on February 23, 2011 (*see* Case ECF No. 107), but that hearing was marked off on March 2, 2011. (*See* Docket Entry of even date.) On November 28, 2011 the Trustee filed a notice that no assets were available for distribution to creditors. (*See* Case Docket, virtual docket entry of even date.) That entry effectively revoked Case ECF No. 65 and rendered the Objection moot.

B. **The Adversary Proceeding**

Cardwell commenced this adversary proceeding on June 2, 2010 by the filing of a complaint (ECF No. 1, the "Complaint") objecting to the Debtors' discharge. The Complaint sounded in six counts as follows:

- COUNT I (Failure To Keep Or Preserve Recorded Information In Contravention of 11 U.S.C. § 727(a)(3) as to the Husband).

- COUNT II (Failure To Keep Or Preserve Recorded Information In Contravention of 11 U.S.C. § 727(a)(3) as to the Wife).

- COUNT III (Concealment of Property of the Debtors with Intent To Hinder, Delay or Defraud in Contravention of 11 U.S.C. § 727(a)(2)(A) as to both Debtors).

- COUNT IV (Concealment of Property Of the Debtors with Intent To Hinder, Delay or Defraud in Contravention of 11 U.S.C. § 727(a)(2)(B) as to both Debtors).

- COUNT V (Making a False Oath or Account in Contravention of 11 U.S.C. § 727(a)(4)(A) as to both Debtors).

- COUNT VI (Transferring or Removing Property in Contravention of 11 U.S.C. § 727(a)(2)(A) as to the Husband).

The Complaint alleges that Cardwell is a "creditor" of the Debtors. (*See* ECF No. 1 ¶ 1, the "Standing Allegation.") Count II (against the Wife) alleges in relevant part as follows:

> At times pertinent hereto, the . . [Wife], as her sole employment, worked closely with her husband on all aspects of the ticket brokerage business [the "Ticket Brokerage Business"] without receiving wages, a salary, or any specific agreed-upon compensation for her work, but receiving and enjoying the profits of said business.
>
> The business responsibilities . . . [the Wife] shared with her husband included record-keeping for the aforesaid business.
>
> In response to question 19c on the Debtors' Statement Of Financial Affairs, . . . [the Wife] identified herself as the only individual who at the time of the commencement of the Debtors' chapter 7 case was in possession of the books of account and records of the aforesaid business.
>
> Since . . . [the Wife's] financial circumstances were closely allied with that of the business, such books of account and records are necessary to determine . . . [the Wife's] own financial circumstances.

(ECF No. 1 ¶¶ 29-32, the "Other Allegations.")  The Other Allegations are repeated in each of the counts (against the Wife) that follow.  (*See id.* ¶¶ 1-41 of Count III, 1-44 of Count IV, 1-45 of Count V.)  On June 29, 2010, the Debtors filed their answer to the Complaint.  (*See* ECF No. 11, the "Answer.")  The Answer responded to the Standing Allegation as follows: "The . . . [Debtors] deny that . . . [Cardwell] is a creditor in the above-referenced bankruptcy, but rather is a debtor to the . . . [Debtors], and owes the bankrupt estate a substantial sum." (ECF No. 11 ¶ 1; *cf.* Case ECF No. 22 (Schedule B, item 21) (listing an alleged claim against Cardwell as an asset of the estates).)  The Answer also responded to the Other Allegations by "leav[ing] . . . [Cardwell] to his proof," (ECF No. 11 ¶¶ 29-32.)

An evidentiary trial (the "Trial") on the Complaint commenced on July 19, 2011.[9] Trial was continued from time to time and, on January 3, 2012, was continued without date (pending resolution of the standing issue discussed herein).  (*See* ECF No. 77 at 55:8-11 (remarks of court).)  Charles

---

[9] A transcript of the Trial appears in the record as ECF No. 51. Reference herein to Trial exhibits appear in the following form: "Trial Exh. __."

Maglieri, Esq. testified for Cardwell at the Trial. (*See* ECF No. 51 at 11-70).) Counsel for the Debtors cross-examined Attorney Maglieri at the Trial and released him at the conclusion of such cross-examination. (*See id.* at 71 *et seq.* (cross-examination), 79:1-2 ("That's all for the witness;" remark of Attorney Marquette).) After the conclusion of Attorney Maglieri's testimony, Cardwell rested his case. (*See* ECF No. 51 at 79:10-11 (remarks of Attorney Jurkiewicz).) Cardwell did not appear at the Trial (although he was listed on Cardwell's List of Exhibits and Witnesses (*see* ECF No. 30)).[10] On August 3, 2011, the Debtors filed a motion for order permitting them to subpoena Attorney Maglieri as their witness at the continued Trial (*i.e.,* after counsel for the Debtors had released that witness). (*See* ECF No. 37; *see also* ECF Nos. 39 (Cardwell's objection thereto), 44 (Attorney Maglieri's objection thereto), 47 (order).) Those matters were continued without date on January 3, 2012 (pending resolution of the standing issue discussed herein). (*See* ECF No. 77, *supra.*)

On July 20, 2011, the court issued that certain Order Requiring Briefing on Standing Issue. (*See* ECF No. 35.) In that order the court noted that the Debtors "have stated the intent to subpoena . . . [Cardwell] to appear as a witness for the Debtors at the . . continued trial for purposes including [proving] that . . . [Cardwell] is not a 'creditor' in this case with standing to object to the Debtors' discharge pursuant to 11 U.S.C. § 727(a) (the 'Standing Issue')," (ECF No. 35 at 1). The court further noted that it "wishe[d] to avoid any unnecessary complications in the trial of this adversary proceeding . . . ," (*id.* at 2). Accordingly, the court ordered each of the parties to "file and serve a

---

[10] The Debtors did not file such a list. The Debtors also had not subpoenaed Cardwell as their witness for the first day of Trial.

memorandum of law addressing the Standing Issue," (*id.*). Cardwell filed a memorandum of law on August 11, 2011 (*see* ECF No. 49), but the Debtors did not.

The Standing Issue came on for a hearing on January 3, 2012. (*See* ECF No. 77 at 5 *et seq.*) At that hearing, the court stated in relevant part:

> Before I go ahead and conclude that there is standing here, I'm going to need more explanation. And what I am going to do is this: I am going to require . . . [Cardwell] to submit something that looks like a . . . Rule 56(a)(1) statement under the [L]ocal [C]ivil [R]ules of the [D]istrict [C]ourt here. And I'm going to want a . . . reasonable amount of detail as to why there is a claim, both against . . . [the Husband] and against . . . [the Wife]. Because . . . I've looked at the proof of claim, and . . . the only place I see her signing [in] it is as a witness.

(ECF No. 77 at 7:16–8:5 (remarks of court).) On January 31, 2012, Cardwell filed his Plaintiff's Statement in Support of Proof of Claim #7-1. (*See* ECF No. 75, the "Cardwell Statement.") On February 1, 2012, the Debtors filed their Defendants Response to Plaintiff's Revised [sic] Proof of Claim #7-1. (*See* ECF No. 78.) The Cardwell Statement stated (among other things) that the Wife "had an ownership interest in . . . [the Ticket Brokerage B]usiness . . . ," (ECF No. 75 ¶ 3).

On December 12, 2011, the Debtors' counsel filed (amended) motions to withdraw as counsel for each of them. (*See* ECF Nos. 67, 66.) On January 3, 2012, the court granted those motions (over the Debtors' objections) and the Debtors now are *pro se* in this adversary proceeding. (*See* ECF Nos. 71, 70; *see also* ECF No. 77 at 9:12 *et seq.*)

## II.   ANALYSIS

### A.   Applicable Law

Issues of standing (including those in Section 727 proceedings) are issues of subject matter jurisdiction. *Warhol v. Barry (In re Barry),* 451 B.R. 654, 660 (B.A.P. 1st Cir. 2011). If a lack of standing is found, the proceeding must be dismissed. *Id.* Generally, standing as a plaintiff in a

Section 727 objection to discharge proceeding is determined in summary fashion. "[S]tanding in a discharge action all boils down to whether there is still a chance of the alleged creditor having an allowed claim; if there is still a chance, then the party has standing . . . ," *8400 N.W. Expressway, LLC v. Morgan (In re Morgan),* 360 B.R. 507, 515 (Bankr. N.D. Tex.), *aff'd*, 2007 WL 4165701 (N.D. Tex. Nov. 19, 2007), *aff'd*, 297 Fed. Appx. 302 (5th Cir. 2008). That the claim is disputed by the debtor does not by itself deprive the creditor of standing to bring a Section 727(a) objection. *See CM Temp. Servs., Inc. v. Bailey (In re Bailey),* 375 B.R. 410, 415 (Bankr. S.D. Ohio 2007). *Accord McGrath v. Moreau (In re Moreau)*, 161 B.R. 742 (Bankr. D. Conn. 1993) (Shiff, J.). However, in cases where the validity of the alleged claim does not present a fair basis for litigation, the purported creditor does not have standing to prosecute a Section 727(a) objection. *See Barry,* 451 B.R. at 660-61.

The reasons for the foregoing are twofold. First, the statute itself limits standing to "[t]he trustee, a creditor, or the United States trustee," 11 U.S.C.A. § 727(c)(1) (West 2012). However, the statutory definition of "creditor" is very broad and includes the holder of a "[]disputed" "claim." *See* 11 U.S.C.A. §§ 101(10), 101(5)(A) (West 2012). Accordingly, a holder of a disputed claim is a "creditor" within the purview of Section 727(c) and has Section 727 standing unless the invalidity of the claim has been conclusively determined. *See, e.g., Stanley v. Vahlsing (In re Vahlsing),* 829 F.2d 565, 567-68 (5th Cir. 1987) (finding that plaintiff lacked standing only because claim had previously been dismissed in state court proceeding). There also are practical reasons which militate in favor of the same result. *See Moreau, supra* at 744 ("The defendants argue that because they challenge the enforceability of the plaintiff's claim, the plaintiff is not their 'creditor' and therefore he lacks standing to bring these actions. That argument is wholly without merit. By the defendants'

- 9 -

logic, a debtor who listed a creditor in the schedules accompanying the bankruptcy petition can eliminate the right of that creditor to challenge the debtor's discharge . . . by merely disputing . . . [the claim's] validity."). *See also Jeffrey M. Goldberg & Assocs., Ltd. v. Holstein (In re Holstein),* 299 B.R. 211 (Bankr. N.D. Ill. 2003), *aff'd,* 2004 WL 2075442 (N.D. Ill. Aug. 31, 2004).[11] *Cf. DISH Network Corp. v. DBSD North America, Inc. (In re DBSD North America, Inc.),* 634 F.3d 79, 93 (2d Cir. 2011) ("A rule that would turn a claimant's standing to appeal a bankruptcy court's ruling on the as-yet-undetermined merits of the claimant's underlying claim would unduly complicate the standing determination . . . ;" chapter 11 plan objection context.).

### B. Application of Law to Fact

#### 1. The Husband

Cardwell's standing with respect to the Husband is clear. Although the Contracts were entered into through Cardwell as "Owner," and the related payments were made by Ticketworld and another apparently affiliated entity (*see* POC),[12] those facts have not been raised by the Debtors to deny Cardwell standing here. Moreover, that argument may have been waived by the Debtors because, although Cardwell is listed as a creditor (albeit a "disputed" one) on the Schedules,

---

[11]

> Any other result . . . would threaten judicial economy. Under . . . [the debtor's] view, a debtor in bankruptcy can always assert as a defense to a creditor's discharge objection that the creditor's claim was legally or factually unsupportable. If that were true, every decision on an objection to discharge would inevitably entail a decision on the merits of the objecting creditor's claim. Bankruptcy courts would end up deciding multitudes of substantive claims ordinarily the province of state courts and federal district courts. In defining a "creditor" to include those holding "disputed" as well as "undisputed claims," Congress evidently had something else in mind.

*Holstein, supra* at 225.

[12] That entity appears to have been "Boston Red Sox Baseball Limited Partnership." (*See id.*, Exhibit "F.")

- 10 -

Ticketworld is not. (*See* Schedules.) Accordingly, it does not conclusively appear that Cardwell does not own at least some portion of debt arising from the Contracts.

Further, all three Contracts were, on their face, entered into by "Tailgate Tickets . . . Represented by Robert Finnimore, acting owner." (*See* POC.) However, it is undisputed that Tailgate Tickets is not a juridical entity (*i.e.,* an entity capable of suing and being sued). (*See* Trial Exh. G at 53:11-12 ("Tailgate Tickets . . . was a website, . . . a domain name I owned." (testimony of the Husband)).) Accordingly, it does not conclusively appear that the Husband is not personally liable for at least some portion of debt arising from the Contracts. Moreover, although the Answer appears to allude to some sort of setoff against the POC (*see* ECF No. 11 ¶ 1; *see also* Case ECF No. 22 (Schedule B, item 21 (claim against Caldwell listed as a joint asset))), it does not conclusively appear that any such setoff would completely wipe out the POC.

For all of the foregoing reasons, it does not conclusively appear that Cardwell could not prevail against the Husband on at least some portion of debt arising from the Contracts. Accordingly, Cardwell has standing to prosecute this adversary proceeding against the Husband.

## 2. **<u>The Wife</u>**

Analysis as to the Wife is somewhat different because she signed the Contracts only as a "witness." However, as noted above, the Cardwell Statement alleges that the Wife "had an ownership interest in . . . [the Ticket Brokerage B]usiness . . . ," (ECF No. 75 ¶ 3). The record does not conclusively establish that such is not so. Therefore, the record does not conclusively establish that the Wife is not personally liable for at least some portion of debt arising from the Contracts. Further, for all of the reasons discussed above, it does not conclusively appear that Cardwell otherwise could not prevail against the Wife on at least some portion of debt arising from the

Contracts. Accordingly, Cardwell also has standing to prosecute this adversary proceeding against the Wife (at least at this time (but see below)).

### III. FURTHER EXPLANATION

For the benefit of the *pro se* Debtors, the court sets forth the following further explanation. The court finds here that Cardwell has made enough of a showing to establish that he is a proper plaintiff to prosecute this adversary proceeding against both Debtors. The court has not assessed otherwise the merits of Cardwell's disputed claim against the Debtors (including whether or not he has made out a *prima facie* case against either or both of them). If the Debtors prevail in this adversary proceeding (and receive their discharges), the merits of that claim may never be determined (except, perhaps, as a setoff against the Debtor Claim). If Cardwell prevails against the Husband,

> [t]his court's refusal to address the merits of . . . [Cardwell's] claim means only that the merits will not be decided in bankruptcy court. If a creditor holding a disputed claim prevails on its section 727 objection to discharge, . . . the creditor can pursue his claims elsewhere . . . . Here, . . . [Cardwell] will be able to bring . . . [his] claims (which are, after all, state law claims) in . . . state court. [The Debtors] . . . can raise . . . [their] arguments there.

*Holstein,* 299 B.R. at 225.

The situation is slightly different with respect to the Wife. That is because the Section 727 standards applicable to her *may* vary depending on whether she was a mere wage earner or an owner of the Ticket Brokerage Business. *Cf., e.g.,* 6 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 727.03[3][b], at 727-30 (16th ed. 2010) ("[I]n general, consumer debtors have no obligation to keep books."). Accordingly, adjudication of the merits of the § 727 complaint *may* involve an adjudication of the issue of whether or not the Wife had an ownership interest in the Ticket Brokerage Business and was something other than a consumer debtor. If that adjudication

compels the conclusion that the Wife is not personally liable for any debt arising from the Contracts because of a lack of a sufficient connection between her and the Ticket Brokerage Business, the counts of the Complaint against the Wife would have to be dismissed for lack of standing. However, any other aspects of the merits of Cardwell's claim need not (and should not) be considered in this adversary proceeding.

IV.  **CONCLUSION**

For the reasons (and to the extent) discussed above, the court finds and/or concludes that Cardwell has standing to prosecute this adversary proceeding against both Debtors. A separate order will issue scheduling a status conference to discuss appropriate "next steps" in this adversary proceeding.

It is **SO ORDERED.**

Dated: April 20, 2012                                            BY THE COURT

*Lorraine Murphy Weil*
**Lorraine Murphy Weil**
Chief United States Bankruptcy Judge