Not For Publication

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - -
IN RE:                              )   CASE NO.        09-31497 (LMW)
                                    )
AMY BETH FINNIMORE and              )   CHAPTER         7
ROBERT ANTHONY FINNIMORE,           )
                                    )
          DEBTORS.                  )
- - - - - - - - - - - - - - - - - - - - - - - - - - - -
RODERICK CARDWELL,                  )   ADV. PRO. NO.   10-3036
                                    )
          PLAINTIFF                 )   ECF NO.         1
                                    )
     vs.                            )
                                    )
AMY BETH FINNIMORE and              )
ROBERT ANTHONY FINNIMORE,           )
                                    )
          DEFENDANTS.               )
- - - - - - - - - - - - - - - - - - - - - - - - - - - -
```

**APPEARANCES**

Edward P. Jurkiewicz, Esq.                Attorney for the Plaintiff
Lawrence & Jurkiewicz, LLC
30 East Main Street
Avon, CT 06001

Amy Beth Finnimore                        Debtors/*Pro Se* Defendants
Robert Anthony Finnimore
29 Wall Street
Milford, CT 06460

**MEMORANDUM OF DECISION AND ORDER RE: (A) DENIAL OF HUSBAND'S
DISCHARGE AND (B) DISMISSAL OF ALL COUNTS AGAINST THE WIFE**

Lorraine Murphy Weil, Chief United States Bankruptcy Judge

This adversary proceeding concerns the above-referenced plaintiff's ("Cardwell") objection pursuant to 11 U.S.C. § 727 to entry of discharge in this chapter 7 case with respect to either or both of the above-referenced debtors (collectively, the "Debtors").[1] This court has jurisdiction over this matter and the authority to enter a final judgment therein as a core proceeding under 28 U.S.C. §§ 1334 and 157 and that certain Order dated September 21, 1984 of the District Court for this District (Daly, C.J.).[2] This memorandum constitutes the findings of fact and conclusions of law mandated by Rule 52 of the Federal Rules of Civil Procedure (made applicable to this adversary proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure).

I.    **PROCEDURAL BACKGROUND**

   A.    **The Chapter 7 Case**

Pursuant to 11 U.S.C. § 302, this chapter 7 case was commenced by the filing of a joint petition by the Husband and the Wife on June 5, 2009. (*See* Case ECF No. 1.)[3] Original schedules and statements were filed shortly thereafter. (*See* Case ECF Nos. 10 (Schedule A), 11 (Schedule D), 14 and 15 (collectively with ECF No. 14, Schedule F), 18 (Statement of Financial Affairs), 22 (Schedule B), 23 (Schedule C), 24 (Schedule E), 40 (Schedule G), 26 (Schedule H), 27 (Schedule I),

---

[1]    The Debtors are husband (the "Husband") and wife (the "Wife").

[2]    That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceedings arising under Title 11, U.S.C., or arising in . . . a case under Title 11, U.S.C. . . . ."

[3]    References herein to the docket of this chapter 7 case appear in the following form: "Case ECF No. __." References herein to the docket of this adversary proceeding appear in the following form: "ECF No. __." The Debtors are represented in the chapter 7 case by Michael A. Laux, Esq. (*See* Case ECF No. 1.) The case docket also lists Richard C. Marquette, Esq. as the Debtors' chapter 7 counsel, but that appears to be the result of a docketing error by counsel. (*See* Docket Entry for Case ECF Nos. 99, 100.) As discussed more fully below, the Debtors originally were represented by Attorney Marquette in this adversary proceeding, but now are *pro se* herein.

28 (Schedule J, collectively with Case ECF Nos. 10, 11, 14, 15, 18, 22, 23, 24, 25, 26, 27, the "Original Schedules"). The Original Schedules were amended from time to time. (*See* Case ECF Nos. 29 (Amended Schedule F), 40 (Amended Schedule G), 71 (Amended Statement of Financial Affairs).[4]) On their Original Schedule F (Creditors Holding Unsecured Nonpriority Claims), the Debtors listed an "unliquidated" and "disputed" claim against the Husband with respect to a debt for "contract specific performance prior to 11/18/08" purportedly owing to Cardwell in the amount of $220,400.00. (*See* Case ECF No. 15.)[5] On Schedule B (Personal Property), the Debtors list an alleged "joint" claim against "Cardewell" [sic] as an asset in the amount of $350,000.00 (the "Debtor Claim"). (*See* Case ECF No. 22 (Schedule B, item 21).)[6]

---

[4] That last amendment was "denied" for the failure of the Debtors to sign the amendment. (*See* Case ECF No. 81.) The Original Schedules (as amended) are hereafter referred to as the "Schedules."

[5] On Amended Schedule F, the Debtors also list an "unliquidated" and "disputed" claim against the Husband for an "alleged loan [from Cardwell] first presented August 2008" in the amount of $300,000 (the "Cardwell Loan Claim"). (*See* Case ECF No. 29 at 4.)

[6] The Debtor Claim is an alleged claim by the Debtors to a one-half interest in a certain "Pick Six" wagering ticket worth (in its entirety) about $700,000. (*See* ECF No. 112 at 28:6-9 (testimony of the Husband).) On June 18, 2012, the chapter 7 trustee (the "Trustee") filed and served an Amended Notice of Intent To Sell (Case ECF No. 118) the Debtor Claim (among other things) for a $7,500.00 cash payment, which notice provided in relevant part as follows:

> All causes of action, of every description, which have been or may be brought by the debtors, individually or collectively, against Roderick Cardwell and/or Ticketworld LLC, including, without limitation, such causes of action which may or have been brought in any judicial forum, including, without limitation, the debtor(s)' claims and allegation asserted in the following actions: Roderick Cardwell, et. al. v. Robert Finnimore (HHD-CV08-5021315S), and Robert Finnimore v. Rod Cardwell (AAN-CV09-5008395S) . . . .
>
> Any person or entity objecting to said private sale or any person willing to make a higher offer for the "Property" should notify Trustee, Ronald I. Chorches at 449 Silas Deane Highway, Wethersfield, Connecticut 06109 and the Clerk of the United States

On December 14, 2009, the Trustee filed a report of assets available for distribution to creditors (*see* Case ECF No. 65), and a notice to that effect (setting a last date to file proofs of claim of March 15, 2010) was issued on December 15, 2009 (*see* Case ECF No. 66) and served on creditors on December 17, 2009 (*see* Case ECF No. 67).[7]  On February 22, 2010, Cardwell filed a proof of claim in this case, naming both of the Debtors as "debtor" and both himself and "Ticketworld LLC" ("Ticketworld") as "creditor."  (*See* Claims Register, Claim No. 7-1, the "POC.")  The POC asserts an unsecured, nonpriority claim in the amount of $220,400.00 for

---

> Bankruptcy Court, at 157 Church Street, CT Financial Bldg. - 18th Floor, New Haven, CT 06510, both in writing, no later than 4:00 PM on the **6th** day of **July, 2012.** An evidentiary hearing is scheduled on the **7th** day of **August, 2012** at the United States Bankruptcy Court, 157 Church Street, CT Financial Bldg. - 18th Floor, New Haven, CT at **10:00 a.m.**
>
> If no objections are filed with the Clerk of the Court, and served upon the Trustee, by 4:00 PM on the **6th** day of **July, 2012** the Trustee shall proceed with the private sale. . . .

(Case ECF No. 118.)  The hearing on the Amended Notice was continued on notice to September 12, 2012.  (*See* Case ECF No. 126.)

The Debtors did not react well to the Amended Notice, becoming threatening and abusive to the Trustee.  As a result, on August 6, 2012 the Trustee commenced Adversary Proceeding #12-3063 against the Debtors.  (*See* A.P. #12-3063 ECF No. 1.)  On August 30, 2012, the court issued a permanent injunction therein against the Debtors which provided that (among other things) the Debtors "are restrained from interfering with the Trustee's administration of their bankruptcy case, including, but not limited to, harassing, intimidating, threatening, or hindering the Trustee or his office staff . . . ," (*id.* ECF No. 15 at 4).

Although the Debtors filed objections to the Amended Notice, they failed to prosecute those objections at the continued September 12, 2012 hearing.  As a consequence, that hearing was marked "off" and it is assumed herein that the Trustee closed the proposed sale.  (*See* Case Docket entry for September 12, 2012.)  How the foregoing affects the "Chapter 7 Trustee's Report of No Distribution" (case docket entry for November 28, 2011) is unclear at this time.

[7]    As alluded to above, the Trustee subsequently rescinded the report of assets. (*See* n.6, *supra.*)

"[b]reach of three (3) fully paid contracts [the 'Contracts'],"  (*id.*).  Cardwell did not file a proof of claim with respect to the Cardwell Loan Claim.

On January 10, 2011, the Debtors filed an objection (Case ECF No. 106, the "Objection") to the POC.  The Objection stated in its entirety: "The Debtors named herein hereby OBJECT to the . . . [POC]." (*Id.*)  The Objection was set down for a hearing on February 23, 2011 (*see* Case ECF No. 107), but that hearing was marked off on March 2, 2011.  (*See* Docket Entry of even date.)

### B. This Adversary Proceeding

#### 1. Through Issuance of Standing Decision

Cardwell commenced this adversary proceeding on June 2, 2010 by the filing of a complaint (ECF No. 1, the "Complaint") objecting to the Debtors' discharge.  The Complaint sounded in six counts as follows:

- COUNT I (Failure To Keep Or Preserve Recorded Information In Contravention of 11 U.S.C. § 727(a)(3) as to the Husband).

- COUNT II (Failure To Keep Or Preserve Recorded Information In Contravention of 11 U.S.C. § 727(a)(3) as to the Wife).

- COUNT III (Concealment of Property of the Debtors with Intent To Hinder, Delay or Defraud in Contravention of 11 U.S.C. § 727(a)(2)(A) as to both Debtors).

- COUNT IV (Concealment of Property Of the Debtors with Intent To Hinder, Delay or Defraud in Contravention of 11 U.S.C. § 727(a)(2)(B) as to both Debtors).

- COUNT V (Making a False Oath or Account in Contravention of 11 U.S.C. § 727(a)(4)(A) as to both Debtors).

- COUNT VI (Transferring or Removing Property in Contravention of 11 U.S.C. § 727(a)(2)(A) as to the Husband).

The Complaint alleges that Cardwell is a "creditor" of the Debtors.  (*See* ECF No. 1 ¶ 1, the "Standing Allegation.").  Count II (against the Wife) alleges in relevant part as follows:

> At times pertinent hereto, the . . [Wife], as her sole employment, worked closely with her husband on all aspects of the ticket brokerage business [the "Ticket Brokerage Business"] without receiving wages, a salary, or any specific agreed-upon compensation for her work, but receiving and enjoying the profits of said business.
>
> The business responsibilities . . . [the Wife] shared with her husband included record-keeping for the aforesaid business.
>
> In response to question 19c on the Debtors' Statement Of Financial Affairs, . . . [the Wife] identified herself as the only individual who at the time of the commencement of the Debtors' chapter 7 case was in possession of the books of account and records of the aforesaid business.
>
> Since . . . [the Wife's] financial circumstances were closely allied with that of the business, such books of account and records are necessary to determine . . . [the Wife's] own financial circumstances.

(ECF No. 1 ¶¶ 29-32, the "Other Allegations.") The Other Allegations are repeated in each of the counts (against the Wife) that follow. (*See id.* ¶¶ 1-41 of Count III, 1-44 of Count IV, 1-45 of Count V.) On June 29, 2010, the Debtors filed their answer to the Complaint. (*See* ECF No. 11, the "Answer.") The Answer responded to the Standing Allegation as follows: "The . . . [Debtors] deny that . . . [Cardwell] is a creditor in the above-referenced bankruptcy, but rather is a debtor to the . . . [Debtors], and owes the bankrupt estate a substantial sum." (ECF No. 11 ¶ 1; *cf.* Case ECF No. 22 (Schedule B, item 21) (listing an alleged claim against Cardwell as an asset of the estates).) The Answer also responded to the Other Allegations by "leav[ing] . . . [Cardwell] to his proof," (ECF No. 11 ¶¶ 29-36).

An evidentiary trial (the "Trial") on the Complaint commenced on July 19, 2011.[8] Charles Maglieri, Esq. testified for Cardwell at the Trial. (*See* ECF No. 51 at 11-70).) Counsel for the Debtors cross-examined Attorney Maglieri at the Trial and released him at the conclusion of such cross-examination. (*See id.* at 71 *et seq.* (cross-examination), 79:1-2 ("That's all for the witness;" remark of Attorney Marquette).) Certain exhibits were introduced into the record by Cardwell at the Trial.[9] After the conclusion of Attorney Maglieri's testimony, Cardwell rested his case. (*See* ECF No. 51 at 79:10-11 (remarks of Attorney Jurkiewicz).) Cardwell did not appear at the Trial (although he was listed on Cardwell's List of Exhibits and Witnesses (*see* ECF No. 30)).[10] On August 3, 2011, the Debtors filed a motion for order permitting them to subpoena Attorney Maglieri as their witness at the continued Trial (*i.e.,* after counsel for the Debtors had released that witness). (*See* ECF No. 37; *see also* ECF Nos. 39 (Cardwell's objection thereto), 44 (Attorney Maglieri's objection thereto), 47 (order).) Those matters (the "Maglieri Matters") were continued without date on January 3, 2012 (pending resolution of the Standing Issue). (*See* ECF No. 77, *supra.*)

On July 20, 2011, the court issued that certain Order Requiring Briefing on Standing Issue. (*See* ECF No. 35.) In that order the court noted that the Debtors "have stated the intent to subpoena

---

[8] The Trial was continued from time to time and, on January 3, 2012, was continued without date (pending issuance of the Standing Decision (as defined below)). (*See* ECF No. 77 at 55:8-11 (remarks of court).) Transcripts of the Trial appear in the record as ECF Nos. 51 (July 19, 2011 Trial) and 112 (July 11, 2012 Trial). Reference herein to Trial exhibits appear in the following form: "Trial Exh. __."

[9] Several deposition transcripts are in the record: Trial Exhs. G, H, N, X, Z, CC. To the extent that the parties make specific reference to a portion of a transcript, the court is required to review the same. Otherwise, the court, in its discretion, may but is not required to review any or all of a particular transcript.

[10] The Debtors did not file such a list. The Debtors also had not subpoenaed Cardwell as their witness for the first day of Trial.

. . . [Cardwell] to appear as a witness for the Debtors at the . . continued trial for purposes including [proving] that . . . [Cardwell] is not a 'creditor' in this case with standing to object to the Debtors' discharge pursuant to 11 U.S.C. § 727(a) (the 'Standing Issue')," (ECF No. 35 at 1). The court further noted that it "wishe[d] to avoid any unnecessary complications in the trial of this adversary proceeding . . . ," (*id.* at 2). Accordingly, the court ordered each of the parties to "file and serve a memorandum of law addressing the Standing Issue," (*id.*). Cardwell filed a memorandum of law on August 11, 2011 (*see* ECF No. 49), but the Debtors did not.

On December 12, 2011, the Debtors' counsel filed (amended) motions to withdraw as counsel for each of them. (*See* ECF Nos. 67 (uncooperative client), 66 (same).) On January 3, 2012, the court granted those motions (over the Debtors' objections) and the Debtors thereafter were and are *pro se* in this adversary proceeding. (*See* ECF Nos. 71, 70; *see also* ECF No. 77 at 9:12 *et seq.*)

On April 20, 2012, the court issued that certain Order and Ruling on Standing Issue (ECF No. 82, the "Standing Decision.")[11] In relevant part, in the Standing Decision the court found and/or concluded "that Caldwell has standing to prosecute this adversary proceeding against both Debtors," (ECF No. 82 at 13). However, the court further warned as follows:

> The situation is slightly different with respect to the Wife. That is because the Section 727 standards applicable to her *may* vary depending on whether she was a mere wage earner or an owner of the Ticket Brokerage Business. *Cf., e.g.,* 6 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 727.03[3][b], at 727-30 (16th ed. 2010) ("[I]n general, consumer debtors have no obligation to keep books."). Accordingly, adjudication of the merits of the § 727 complaint *may* involve an adjudication of the issue of whether or not the Wife had an ownership interest in the

---

[11] The Debtors filed a motion to reconsider the Standing Decision (*see* ECF No. 86) which was denied by order dated May 10, 2012 (*see* ECF No. 91) "for the reasons stated on the record [of the May 9, 2012 hearing on the same]." The Standing Decision rendered the issue of the nontestimony by Cardwell at the Trial moot because the Debtors wanted to use Cardwell's testimony to attack the POC.

> Ticket Brokerage Business and was something other than a consumer debtor. If that adjudication compels the conclusion that the Wife is not personally liable for any debt arising from the Contracts because of a lack of a sufficient connection between her and the Ticket Brokerage Business, the counts of the Complaint against the Wife would have to be dismissed for lack of standing.

(ECF No. 82 at 12-13.)[12]

## 2. After Issuance of Standing Decision

On May 24, 2012, the court disposed of the Maglieri Matters in a manner adverse to the Debtors for the reasons stated on the record of the May 23, 2012 hearing. (*See* ECF Nos. 99, 100, 101.) Prior to the continued Trial on July 11, 2012, the Debtors filed a pretrial brief (ECF No. 95), a supplement thereto (ECF No. 107), an Amended Answer (ECF No. 109) and a further Amended Answer (ECF No. 110). The continued Trial was convened on July 11, 2012. The Husband testified at the July 11, 2012 continued Trial, and was subject to cross-examination. The Husband directed the Wife from his seat on the witness stand not to testify at the July 11, 2012 continued Trial. (*See* ECF No. 112 at 98:13-99:16 (direction by the Husband).) The Wife complied with his direction and did not testify at the continued Trial. (*See id.*)

The court took the matter under advisement at the conclusion of the continued Trial, subject to post-trial briefing. A post-trial brief was filed by Caldwell on September 21, 2012 (*see* ECF No. 114, the "Cardwell Brief") and a response and an amended response were filed by the Debtors on September 28, 2012 (*see* ECF Nos. 115 (the "Debtor Initial Response"), 116). This matter is ripe for the disposition set forth below.

For the benefit of the *pro se* Debtors (particularly the Wife), it should be noted that neither of the Debtors has filed a Form B23 in this case ("Debtor's Certification of Completion of

---

[12] The Standing Decision hereby is incorporated herein as if fully set forth.

Postpetition Instructional Course Concerning Personal Financial Management"). **To the extent that the Debtors (or either of them) were to prevail in this adversary proceeding, the relevant Debtor(s) still could not receive a discharge in this case without completing the required course and filing the appropriate certificate (*i.e.,* Form B23). See 11 U.S.C. § 727(a)(11); Fed. R. Bankr. P. 4004(c)(1)(H).**

II.   **FACTS**[13]

For some time prior to July of 2007, the Husband operated a business (the "Business") as a "ticket broker" out of an office (the "Office") at 491 New Haven Avenue, Milford. (*See* Trial Exh. H at 86:1-19 (deposition testimony of the Wife).)  The Business bought tickets (primarily tickets to New York Giants football games) from ticket holders at a below-market price, deferred payment to the ticket holder, sold the ticket at a higher price for cash, and enjoyed the use value of that cash until payment to the ticket holder no longer could be deferred. (*See* ECF 112 at 33:6-34:4 (Trial testimony of the Husband).)  "[A]ll I did was Giants [tickets]," (*id.* at 41:23 (Trial testimony of the Husband)).

However, sometime before July of 2007, the secondary market for Giants tickets changed for the worse so drastically that the Business began to fail. (*See id.* at 40:6-25 (Trial testimony of the Husband).)  The Husband unsuccessfully tried to sell the Business, but no one was interested in buying the Business without supporting records (discussed below). (*See id.* at 48:16-49:8 (Trial testimony of the Husband).)  The Husband claims to have had a sort of nervous breakdown in response to the pressure of the impending Business failure and claims to have just walked away from the Business on or about July 17, 2017. (*See id.* at 40:21-41:8 (Trial testimony of the Husband).)

---

[13]   Additional facts are found where indicated below.

The Husband's half-brother, Shane McCormack, took over the Office and on July 17, 2007 filed a "Trade Name Certificate" with the Milford Town/City Clerk in respect of the Business. (*See id*. at 61:7-63:6 (Trial testimony of the Husband); *see also* Trial Exh. P.)

Except for the Tax Returns (as hereafter defined) for which there was no supporting documentation, the Debtors had virtually no records for the Business. (*See* ECF No. 51 at 69:13-70:7 (Trial testimony of Attorney Maglieri).) The non-existence of records for the Business was intentional on the Husband's part. (*See* Trial Exh. G at 57:17-18, 58:13-20 (deposition testimony of the Husband).) Moreover, after the Husband was sued by the NFL in 2005, the Husband began to destroy Business records on an ongoing basis. (*See id.* at 61:18-20 (deposition testimony of the Husband) ("Because of what happened with the NFL in 2005. [sic] I destroy [sic] everything after I was done with it. I destroyed them.")[14]

### III.   EVIDENTIARY ISSUES

The Admissibility of Trial Exhs. I (Debtors' 2005 IRS Tax Return), J (Debtors' 2006 IRS Tax Return) and K (Debtors' 2007 IRS Tax Return)[15] has been a source of controversy throughout

---

[14]   At the Trial, the Husband denied that he had a program of record destruction because of the 2005 NFL suit. (*See* ECF No. 112 at 75:23-77:24 (Trial testimony of the Husband).) That Trial testimony is inconsistent with the deposition testimony quoted above. The Husband offers yet another explanation for his post-NFL suit conduct in the Debtor Initial Response which is inconsistent both with his deposition testimony and his Trial testimony. (*See* ECF No. 115 at 2 (all sic) ("The Plaintiff Mr Cardwells Attorney tried to pull a fast one in court when Mr. Finnimore was on trial when he said after the NFL case Mr. Finnimore destroyed records when in fact it was part of the settlement with the NFL that The Plaintiff Mr. Cardwell's Father [Nick Cardwell] was aware of the settlement where Mr. Finnimore agreed to destroy everything associated with the NFL.") The court finds the Husband's deposition testimony to be the most persuasive on the issue of intentional destruction of records.

[15]   Trial Exhs. I, J and K are hereafter referred to collectively as the "Tax Returns."

this proceeding. Trial Exh. I was admitted as a full exhibit on the record at a May 23, 2012 status conference in this proceeding. (*See* Oral Record of 5/23/2012 Status Conference at 11:56:17 *et seq.*) Trial Exhs. J and K were conditionally admitted into evidence at the July 11, 2012 continued Trial. (*See* ECF No. 112 at 18:17-19:17.) However, as will be apparent from the analysis which follows, the court has not relied on any of the Tax Returns in reaching the decision set forth below. Accordingly, because it makes no difference to the result here, Trial Exhs. J and K are admitted into evidence here for what they are worth.

### IV.  ANALYSIS (THE HUSBAND)

#### A.    11 U.S.C. § 727(a)(3)[16]

Section 727(a) of the Bankruptcy Code provides in relevant part:

> The court shall grant the debtor a discharge, unless –
> . . .
>   (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case . . . .

11 U.S.C.A. § 727(a) (West 2013). "[G]iven that the denial of a debtor's discharge 'imposes an extreme penalty for wrongdoing,' Section 727 'must be construed strictly against those who object to a debtor's discharge and liberally in favor of the . . . [debtor].'" *Cadle Co. v. Ogalin (In re Ogalin),* 303 B.R. 552, 557 (Bankr. D. Conn. 2004) (Dabrowski, J.) (quoting *In re Chalisani,* 92 F.3d 1300, 1310 (2d Cir. 1996)).

> To implement . . . [the] record keeping requirement, § 727(a)(3) provides a two step approach. The initial burden lies with the creditor to show that the debtor failed to

---

[16] Because the court denies the Husband's discharge pursuant to Count I of the Complaint, it is unnecessary to consider the other theories of the Complaint against the Husband.

> keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertained. If the creditor shows the absence of records, the burden falls upon the . . . [debtor] to satisfy the court that his failure to produce them was justified.

*D.A.N. Joint Venture v. Cacioli (In re Cacioli),* 463 F.3d 229, 235 (2d Cir. 2006). *See also Schackner v. Breslin Realty Dev.,* No. 11-CV-2734(JS), 2012 WL 32624, at *4 (E.D.N.Y. Jan. 5, 2012) ("*First,* . . . the Court must determine whether the Debtor's records present a complete and accurate picture of the [d]ebtor's financial condition and business transactions. The burden of proving the [in]adequacy of the debtor's records rests with the party objecting to discharge. *Second,* the Court must determine if the debtor's failure to maintain and produce adequate records is justified. The burden shifts to the debtor to justify the absence of comprehensive records." (citations omitted)).

> In addition to the information contained in the available financial records, courts may also consider [(the "Other Factors")]: (1) whether the debtor was engaged in business, and if so, the complexity and volume of the business, (2) the amount of the debtor's obligations, (3) whether the debtor's failure to keep or preserve books and records was due to the debtor's fault, (4) the debtor's education, business experience and sophistication, (5) the customary business practices for record keeping in the debtor's type of business, (6) the degree of accuracy disclosed by the debtor's existing books and records, (7) the extent of any egregious conduct on the debtor's part, and (8) the debtor's courtroom demeanor.

*Pu v. Mitsopoulos (In re Mitsopoulos),* 487 B.R. 604, 612 (Bankr. E.D.N.Y. 2013).[17]

---

[17] The court believes that the Other Factors may conflate the issue of the adequacy of records with the issue of justification. However, although the Other Factors are not entirely satisfactory in that regard, the court still finds them to be a useful analytical tool.

B. **Application of Law to Fact**

1. **Inadequacy of Records**

Cardwell has carried his burden as to the inadequacy of the Business records. As noted above, virtually the only records produced by the Debtors were the Tax Returns (for which there was no supporting documentation). However, tax returns without supporting documentation are inadequate documentation as a matter of law. *See Schackner, supra,* at *5. Accordingly, there are no meaningful records for the Business. That at least some quantum of records was required for this business is evidenced by the Husband's testimony that potential buyers for the Business lost interest when they learned that the Business could not meaningfully document its past financial performance.

2. **The Other Factors**

The court analyzes the Other Factors as follows:

- *Whether the debtor was engaged in business, and if so, the complexity and volume of the business.* The Husband was engaged in the Business which was, by his own testimony, a high volume business. The record keeping requirements of the Business were not unduly complex but that does not excuse the absence of records here.

- *The amount of the debtor's obligations.* The Schedules show unsecured claims for the Husband (either alone or jointly with the Wife) in the aggregate amount of $886,003.00. (*See* Case ECF No. 29 (Amended Schedule F).) Deducting the disputed Cardwell claims from that total (as well as a $34,230.33 disputed claim to Pepe and Hazard LLP for certain legal services) leaves a claims base of $331,372.67. Schedule B shows net assets aggregating

$467,000.00 (including $437,500.00 in litigation claims against "Cardewell [sic]", "NetDogs" and George Jobel. (*See* Case ECF No. 22.)[18]

- *Whether the debtor's failure to keep or preserve books and records was due to the debtor's fault.* The record supports a finding that the Husband's election not to keep or preserve records for the Business was a conscious decision on his part.

- *The debtor's education, business experience and sophistication.* The Husband did not complete high school and his early years may have been troubled. (*See* ECF No. 112 at 51:7-55:25 (Trial testimony of the Husband).) However, he has a good grasp of his own business. (*See, e.g., id.* at 33:6-34:4, 56:3-6, 68:9-15). Even if the court accepts the Husband's testimony that he had a nervous breakdown in July of 2007 as the Business began to fail, that event does not explain the policy of record destruction which the court finds he put in place around 2005 while the Business was still functioning relatively well.

- *The customary business practices for record keeping in the debtor's type of business.* The Husband testified that he had no idea how similar businesses kept their records. (*See* ECF No. 112 at 48:5-13 (Trial testimony of the Husband).) However, as noted above, the Husband admitted at the Trial that prospective purchasers backed away from the Business because of the lack of records.[19]

---

[18] The actual litigation value of those claims is unknown although the court notes that the Cardwell Claim was sold by the Trustee for no more than $7,500. *See* note 6, *supra*.

[19] The court agrees that the Husband's "cash accounting system" argument made by him at the Trial (*see* ECF No. 112 at 39:6-17, 47:11-12 (Trial testimony of the Husband)) cannot succeed for the reasons stated in the Cardwell Brief (*see* ECF No. 114 at 28-29 and n.18).

- *The degree of accuracy disclosed by the debtor's existing books and records.* As noted above, books and records for the Business were virtually nonexistent (except for the Tax Returns which, also as noted above, will not suffice).

- *The extent of any egregious conduct on the debtor's part.* As noted above, the court finds that the Husband engaged in an intentional program of record destruction with respect to the Business from about 2005 in response to the NFL lawsuit.

- *The debtor's courtroom demeanor.* The court has had an ample opportunity to observe the Husband in court and has found his candor to be questionable. (*See, e.g.,* ECF No. 112 at 76:15-77:10 (Husband questioning veracity of deposition transcript with which he was being impeached).)[20]

Balancing all of the foregoing, the court concludes that the Husband has failed to prove that his failure to keep or preserve the Business records was justified.

### C. Conclusion

For the reasons discussed above, the court concludes that (a) judgment must enter for Cardwell and against the Husband on Count I of the Complaint, and (b) a discharge of the Husband shall not issue in this Chapter 7 case.

---

[20] The Husband cannot shift his obligation to keep or preserve the Business records to the Wife. He admitted at the Trial that the Wife did the best she could with him in that regard. (*See* ECF No. 112 at 60:21-22 ("[The Wife] was a stickler to keep the records.").)

## V.   ANALYSIS (THE WIFE)

### A.   Vicarious Liability

As discussed in the Standing Decision, the Wife was not a signatory to the Contracts (except, in one instance, as a "witness"). The spousal relationship does not automatically make one spouse liable for the debts of the other. *See Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa),* 287 B.R. 515, 526-27 (B.A.P. 9th Cir. 2002). Cardwell argues that "both [the Debtors] must be considered to be co-owners of the [B]usiness," (ECF No. 114 at 32). However, Cardwell does not explain how being "co-owner" with the Husband with respect to the Business would make the Wife liable for the Husband's (disputed) debt to Cardwell. Moreover, Cardwell argues almost in the next breath that the Husband and the Wife were not partners with respect to the Business. (*See* ECF No. 114 at 32.) The Wife herself repeatedly denied that she and the Husband were partners with respect to the Business. (*See, e.g.,* Trial Exh. H at **53:67** (deposition testimony of the Wife); *id.* at 79 (same); 5-6 (same); Trial Exh. CC at 331:15-18 (same).) It is true that some of the Husband's testimony could be interpreted to the contrary. However, Cardwell himself notes that the Husband's testimony generally is unreliable. (*See id.* at 26 n.16.)

Cardwell suggests no viable theory upon which the Wife is liable for the disputed debt allegedly owed by the Husband to Cardwell and as noted above, Cardwell undercuts his own case in that regard. For all of the foregoing reasons, it conclusively appears to the court that Cardwell is not a "creditor" of the Wife. The Standing Decision put Cardwell on notice that, although the issue of whether Cardwell was the Wife's creditor was not to be tried directly at the Trial, the court's decision that Cardwell had standing to prosecute the subject discharge objection against the Wife would be reconsidered if it conclusively appeared to the court at the Trial that Cardwell is not a

- 17 -

creditor of the Wife. Accordingly, the court reconsiders the Standing Decision to the extent that the court now concludes that Cardwell lacks standing to prosecute this Section 727(a) discharge objection against the Wife.

### B. Conclusion

For the reasons discussed above, Counts II, III, IV and V against the Wife shall be dismissed for lack of standing.

## VI. CONCLUSION

### A. The Husband

For the reasons discussed above, (1) judgment shall issue in Cardwell's favor and against the Husband and (2) no discharge shall issue in this case with respect to the Husband. A conforming judgment shall issue.

### B. The Wife

For the reasons discussed above, Counts II, III, IV and V against the Wife shall be dismissed for lack of standing.

It is **SO ORDERED.**

Dated: April 22, 2013                                          BY THE COURT

*Lorraine Murphy Weil*
Lorraine Murphy Weil
Chief United States Bankruptcy Judge